OPINION OF THE COURT
John F. Richey, J.
Before the court is an application by the St. Lawrence County District Attorney’s Office for the appointment of a special prosecutor pursuant to County Law § 701. On May 5, 2016, the court received a letter from Frank R. Cositore, Jr., who is the Chief Assistant District Attorney for St. Lawrence County. In that correspondence, it was requested that the court appoint a special prosecutor “in reference to the above-named criminal action and any matter presently pending in this office wherein Edward Narrow, Esq. is the attorney of record.” Attached to the letter was a list of 59 pending cases involving the law firm of Dumas & Narrow.[1]
The letter from Cositore further stated that the Office of the St. Lawrence County District Attorney should be disqualified from all of attorney Narrow’s cases “due to ethical restraints mandated by the can[ons] of ethics which have been implicated as a direct result of the grievance complaints filed by Mr. Narrow as well as other pending matters.” The letter, which was addressed to the Honorable Derek R Champagne, was referred to the undersigned pursuant to the terms of the 2016 Annual Order for the Fourth Judicial District, which designates the *710 order of judges assigned to hear applications for special prosecutors in the absence or unavailability of the Honorable Jerome J. Richards.[2]
By letter dated May 5, 2016, this court advised Cositore to submit a sworn or affirmed[3] petition to appoint a special prosecutor, alleging, with specificity, the purported conflict necessitating the appointment of a special prosecutor. The letter further requested that he support the petition with affidavits, particularly from the member of the office claiming the conflict, as well as any relevant documentary evidence.
On May 10, 2016, the court received a petition and four affirmations of counsel, together with an affidavit of service by mail of the same upon attorney Narrow. Upon review of the petition and the affirmations and the requirements of CPLR 2106, the court contacted Cositore regarding the insufficiency of the language of the affirmations, and advised him that the use of affirmations under CPLR 2106 was inappropriate due to the fact that the District Attorney is a party to the action.
On May 12, 2016, Cositore submitted to the court a sworn petition,[4] together with his own affidavit, and affidavits from District Attorney Mary Rain, Assistant District Attorney Joshua A. Haberkornhalm, and Assistant District Attorney Sara E. Clothier. The affidavit of Cositore contains the bulk of the factual allegations in support of the petition. The affidavits of Rain, Haberkornhalm, and Clothier support the request and adopt the statements of Cositore. There was also an affidavit of service by mail of the corrected petition and supporting affidavits upon attorney Narrow.
This matter has also been further complicated by the ongoing regular flow of cases before Judge Champagne in County Court. Since the filing of the original request for a special prosecutor made in Cositore’s May 5, 2016 letter, proceedings have been held before Judge Champagne in at least two cases involving the St. Lawrence County District Attorney’s Office *711 and attorney Narrow. On May 10, 2016, attorney Narrow and Assistant District Attorney Haberkornhalm appeared in the matter of People v James Francis. While on the record in open court, the instant petition was discussed, inter alia, and attorney Narrow joined in the request for the appointment of a special prosecutor in that specific case. Also on May 10, 2016, attorney Narrow and Assistant District Attorney Haberkornhalm engaged in discussions on the record before Judge Champagne while in chambers in the matter of People v Shawn G. Sheridan. These discussions then continued on the record in open court as between attorney Narrow and Chief Assistant Cositore. While on the record in open court, attorney Narrow requested the appointment of a special prosecutor in that specific case.
In light of the above listed discussions on the record, the references made therein, and upon review of the issues raised and set forth in the instant petition and supporting affidavits, the court has obtained and reviewed the relevant portions of the transcripts of the following proceedings: (1) People v Girard R. Gillett dated April 7, 2016, before the Honorable Jerome J. Richards, and involving District Attorney Mary Rain, Chief Assistant District Attorney Frank Cositore, law intern Jonathan Jirik, Edward Narrow, Esq., and Thomas Finnerty, Esq.; (2) People v Shawn G. Sheridan dated April 13, 2016, before the Honorable Jerome J. Richards, and involving District Attorney Rain, Chief Assistant Cositore, Assistant District Attorney David Park, attorney Narrow, and Gerald J. Ducharme, Esq.; (3) People v Shawn G. Sheridan dated May 10, 2016; and (4) People v James Francis dated May 10, 2016.
No written response to the petition has been submitted by attorney Narrow. When contacted by court staff to inquire whether he would be submitting a written response to the instant petition,[5] attorney Narrow indicated he did not intend to submit any responsive papers to supplement the statements he made on the record in the matters involving Shawn Sheridan and James Francis.
Turning to the petition and supporting affidavits, Cositore states that the request is based upon the general requirements of the New York State 2016 Ethical Guidelines for Prosecutors and the Rules of Professional Conduct (citing 22 NYCRR 1200 et seq.). More specifically, he states that the request is based *712 upon “the actions and statements made on the record [by the involved parties] and to the media in the past several weeks and the controversies that have arisen.”[6]
Upon review of the petition and supporting affidavits, the court can discern four distinct areas of conflict that are alleged to exist as between the District Attorney’s Office and attorney Narrow. The first conflict alleged is that District Attorney Rain and Cositore were “noticed of a complaint and claim of criminal fraud in open Court and on the record during a case involving Mr. Narrow as counsel.” Cositore further alleges that the “case is now tainted; the members of the staff and defendant are now witnesses of that action and thus will be subject to being called as such.” Neither the petition nor any of the supporting affidavits identify the particular case to which reference is made, or any other specific information as to the nature of the complaint and/or claim of fraud. That being the case, the alleged conflict can be put in context and analyzed only upon a review of the relevant portions of the transcript in the matter of the People v Girard R. Gillett from April 7, 2016.
The relevant portion of the transcript of that proceeding is informative. The events that gave rise to the alleged conflict arose near the end of the evidentiary phase of a felony jury trial, over which the Honorable Jerome J. Richards was presiding, and which was being prosecuted by Cositore and Jonathan Jirik, a law intern operating under a practice certificate from the Appellate Division. At that time, the following colloquy occurred:
“Mr. Narrow: Thank you, your honor. Judge, my understanding is that Mr. Jirik has a practice order and he needs to have someone in here with him at all times. So, I don’t think we can do anything without . . . am I right on that?
“Mr. Jirik: Your Honor, Mr. Cositore just stepped out for a minute. Should be right back.
“The Court: Where is your practice certificate, Mr. Jirik?
“Mr. Jirik: I have a copy in my office, your Honor.
“The Court: Please go get it.”
After that exchange, Jirik retrieved his practice certificate and returned to the courtroom. Judge Richards then reviewed on *713 the record section 805.5 of the Rules of the Appellate Division, Third Department (22 NYCRR 805.5), which sets forth the authorized activities in which an eligible law student or law school graduate can participate and engage. He then concluded there was no authorization for Jirik to try a felony criminal case. Attorney Narrow then moved to dismiss the indictment upon two grounds. The first was that Jirik did not have the authorization to prosecute the matter due to the limitations of his practice order, thus leading Narrow to speculate that Jirik had potentially committed the unauthorized practice of law. The second ground for dismissal was the People’s failure to present a prima facie case. The court granted the People a brief recess, which was followed by this exchange:
“The Court: Mr. Narrow, anything else you want to say about the unauthorized practice by Mr. Jirik?
“Mr. Narrow: No, your Honor.
“The Court: Mr. Cositore, anything else you want to say?
“Mr. Cositore: No, your Honor. We have looked up the statute. Mr. Narrow is correct and the Court is correct. It was, obviously, a mistake in the office that he was assigned to the case somehow.”
The court, following a lengthy analysis of relevant case law on the subject of the unauthorized practice of law, denied attorney Narrow’s motion to dismiss upon that ground. However, Judge Richards added the following:
“The Court: So, to come in here and say, Judge, we didn’t know — it is embarrassing, because it tells me that no one has read the law. And all of them, you, Mr. Jirik, you, Mr. Cositore, Ms. Rain, should be embarrassed and ashamed of yourselves, because you have perpetrated a fraud on the Court, whether intentionally or unwittingly, it doesn’t matter. You are professionals. You are required to know the law and you come in here and say, well, sorry Judge, we didn’t know the law. It is absolutely unacceptable. And I’m going to make a record. I’m going to write to Judge Peters at the Appellate Division and put her on notice of my understanding of the facts in this case, because it is not right. It is not right.”
The court then went on to grant attorney Narrow’s motion to dismiss the indictment due to a failure of the People to present a prima facie case. As a result of the dismissal, the case has concluded and is no longer pending before the court.
*714 The second purported conflict as between the Office of the District Attorney and attorney Narrow arises from the alleged filing of a grievance by attorney Narrow against certain members of the District Attorney’s Office stemming from the events of the Gillett trial, as set forth above. Cositore appears to contend that the mere filing of a grievance by attorney Narrow against the District Attorney mandates the appointment of a special prosecutor in all of attorney Narrow’s cases. The specific allegation from Cositore’s affidavit is as follows:
“Mr. Narrow subsequently filed a grievance against this office naming myself and Ms. Rain, he to [sic] noticed this office specifically myself and Ms. Rain in open Court, while the matter of People v Shawn Sheridan [sic]. That case is now tainted as well and the defendant is now a witness of that action and thus will be subject to being called as such.”
The issue of the grievance was discussed on the record in the case of People v Shawn G. Sheridan on April 13, 2016 (Richards, J., presiding). A review of the transcript from the Sheridan case on that date, sheds significant light on the facts underlying this alleged conflict. The Sheridan matter was in court for a Huntley hearing on April 13, 2016, but before the hearing could proceed, the court was informed of a possible conflict involving attorney Narrow and the Office of the District Attorney. It was made known to the court that attorney Narrow was also representing, or had recently represented, Chief Assistant District Attorney David Haggard in a civil matter.[7] It appears that during the pendency of the Sheridan case to that point, attorney Narrow was representing both the defendant in the criminal action, and in an unrelated civil case, the prosecutor who had obtained the indictment against the defendant. When those facts became known to the court, separate counsel was appointed to the defendant to advise him of his rights regarding the conflict. After conferring with separate counsel, the defendant advised the court that he understood the conflict and wished to continue to be represented in the matter by attorney Narrow.
Following those developments, District Attorney Rain began a lengthy recitation into the record regarding both the grievance that was purportedly filed against her and Cositore, as well as her suspicions regarding the relationship between at *715 torney Narrow and former Chief Assistant District Attorney Haggard. With respect to the filing of the grievance, the transcript reveals that it was District Attorney Rain herself who first disclosed, on the record, that attorney Narrow had filed a grievance against her. She refers to a letter dated April 13, 2016 from attorney Narrow, in which attorney Narrow purportedly disclosed “his discomfort in reporting [DA Rain] for possible criminal conduct.” She further stated as follows:
“Ms. Rain: So based on my review of the file, my review of Mr. Haggard’s actions, my review of Mr. Narrow’s actions today regarding these complaints that he’s woefully regretted that he has to respond at this criminal conduct — although I don’t see what the criminal conduct is — that he has not represented his client in this case. And that between him and Mr. Haggard, they have created a situation for this client that favors him and disfavors the People. And I certainly want to know what other cases they have worked on, conspired, or had conversations regarding, so that we can provide proper representation to the defendant and, also, so that we can figure out where the People have been harmed.”
When the court asked attorney Narrow for a response, he stated as follows:
“Mr. Narrow: Judge, in regards to the filing of the complaint to the Grievance Committee . . . I’ve clearly done what I think I was ethically bound to do.”
The third basis upon which the District Attorney seeks the appointment of a special prosecutor is that attorney Narrow is purportedly the target of a criminal investigation which may be presented to a grand jury. This issue also came to light during the proceedings held in the Sheridan matter on April 13, 2016. The transcript from that proceeding reveals that District Attorney Rain stated on the record and in open court that it is her intent to indict attorney Narrow for a felony that he purportedly committed during his representation of defendant Oral Nicholas Hillary. She made it clear that she was also investigating the relationship between attorney Narrow and former Chief Assistant District Attorney Haggard. As the result of that revelation on the record, attorney Narrow then orally gave notice pursuant to Criminal Procedure Law § 190.50 (5) (a) of his intent to testify before any grand jury investigating a complaint of which he is the target. The People allege that due *716 to this investigation, every time a member of the District Attorney’s staff communicates with attorney Narrow, he/she is subject to possible violations of ethical codes and of being called as a witness in any future case.
The fourth reason cited in support of the request for the appointment of a special prosecutor in all of attorney Narrow’s cases is the disclosure that former Chief Assistant District Attorney Haggard was represented in a civil matter by attorney Narrow for almost two years. As noted above, this disclosure was also made on the record in the Sheridan matter on April 13, 2016. It is averred that the District Attorney’s Office was never informed of that representation, and that as a result, there is an ethical issue attached to every case that involved Chief Assistant District Attorney Haggard and attorney Narrow.
Section 701 of the County Law grants the court the authority to appoint a special district attorney (also known as a “special prosecutor”), whenever the district attorney is disqualified from acting. An application pursuant to County Law § 701 can be made either by a party adverse to a district attorney or by the district attorney. The statute is silent as to what facts may render a district attorney as being “disqualified from acting,” or the appropriate standard to be applied in order to make such a determination.
It is clear from a review of relevant case law that it is generally the party adverse to the district attorney who makes the application for a special prosecutor. The well-established standard of review in that context requires a showing of “actual prejudice arising from a demonstrated conflict of interest or a substantial risk of an abuse of confidence.” (Matter of Working Families Party v Fisher, 23 NY3d 539, 546 [2014], citing to People v Adams, 20 NY3d 608, 612 [2013].) In that case, the Court went on to say that in “rare [circumstances], the appearance of impropriety itself is a ground for disqualification.” (Id. at 546.) Nevertheless, there remains a body of case law which states that “the narrowly defined standard for the removal of a public prosecutor ... is not satisfied by the mere appearance of impropriety.” (People v Gigliuto, 22 AD3d 890, 891-892 [3d Dept 2005], citing to Matter of Schumer v Holtzman, 60 NY2d 46, 55 [1983]; People v Early, 173 AD2d 884 [3d Dept 1991], lv denied 79 NY2d 1000 [1992]; People v Frye, 129 AD2d 985 [4th Dept 1987], lv denied 72 NY2d 859 [1988].)
It was not until recently, however, that the Court of Appeals brought clarity to the appropriate standard to be applied when *717 the request for a special prosecutor is made by a district attorney. Again, in Matter of Working Families Party v Fisher (23 NY3d 539, 546 [2014]), the Court of Appeals held that “a district attorney seeking to disqualify himself or herself may do so upon a good faith application containing the reasonable grounds for his belief that he is so disqualified” (internal quotations marks and citations omitted). In that case, the district attorney took the position that whether to disqualify in any given case was a matter of his sole discretion. (Id.) The Court disagreed, finding that “to allow a district attorney to disqualify himself and his office in his sole discretion would value too lightly the public interest in having prosecutorial duties performed, where possible, by the constitutional officer chosen by the electorate.” (Id. [internal quotations marks and citations omitted].) Thus, it is for the court to weigh the merits of the request and determine if a special prosecutor should be appointed upon the district attorney’s request. The court would note that this conclusion is contrary to the assertion made by District Attorney Rain in the Sheridan matter on April 13, 2016.[8] Nevertheless, it is clear that the standard to be applied when a district attorney applies for the appointment of a special prosecutor, is the reasonableness of the request in light of the circumstances of the case as decided by the court.
In applying these standards to the case at bar, the court will first examine the arguments of the District Attorney in favor of her disqualification of all cases involving attorney Narrow. First, there is the incident which originated during the Gillett trial, which resulted in the purported filing of a grievance by attorney Narrow with the Committee on Professional Standards. Assuming that a grievance was actually filed,[9] the court finds no reasonable basis for the disqualification of the Office of the District Attorney in all of attorney Narrow’s cases based solely upon that occurrence. The underlying case which was the basis for the grievance has been dismissed, and attorney Narrow’s representation of that client in that particular matter has concluded. Moreover, it is clear that the factual basis for the grievance occurred on the record and in open *718 court. Assuming that the grievance relates solely to matters that took place on the record — the law intern Jirik exceeding the scope of his practice order, the District Attorney allowing same to occur, and the admission by Cositore on the record that the assignment of the case to Jirik was “a mistake” — the further testimony of witnesses, particularly that of the complainant, attorney Narrow, would appear unnecessary. Additionally, to grant the request of the District Attorney for disqualification on all of an attorney’s cases based solely on the filing of a grievance with the Committee on Professional Standards is overly broad and unnecessary. Perhaps more significantly, neither the District Attorney nor any of her staff indicates that they cannot conduct their cases with attorney Narrow with impartiality and evenhandedness.
Furthermore, there is no legal bar prohibiting the witnesses to such an occurrence from engaging in their professional duties in the normal course of their respective businesses, including negotiating and discussing other pending cases. Distilled to its essence, the District Attorney is arguing that to continue to engage with attorney Narrow would create the appearance of impropriety due to his filing of the grievance against her and members of her staff. The court disagrees, and finds that the purported appearance of impropriety in this case does not rise to the level of being a “rare [circumstance]” wherein the appearance of impropriety itself is a legitimate basis for disqualification. (See Matter of Working Families Party v Fisher, 23 NY3d 539, 546 [2014].)
Upon review of the petition and supporting affidavits, it appears to the court that the primary rationale promulgated by the Office of the District Attorney for the relief requested is the allegation that attorney Narrow is the apparent target of a criminal investigation related to his representation of Oral Nicholas Hillary, and his relationship with then Chief Assistant District Attorney David Haggard. In his affidavit, Cositore notes that because attorney Narrow is a target, every time one of the staff has a discussion with him, they are subject to possible violations of ethical codes.
This is a difficult conundrum. The Office of the District Attorney proposes to resolve the stated conflict with attorney Narrow by the appointment of a special prosecutor(s) in approximately 59 pending cases, a number which apparently does not include pending cases in the various justice courts of St. Lawrence County. The court also recognizes that the number of *719 cases is a moving target, with more being added as indictments and superior court informations come onto the calendar, and with some resolving through negotiations.[10] Attorney Narrow and his law firm partner certainly have the right to continue to practice law in this court, and clients certainly have the right to choose them as counsel.
The Court of Appeals has made it clear that the standard to be applied is the reasonableness of the request based upon the underlying facts. In making such a determination, it is necessary for the court to weigh and balance all of the relevant factors. Included in the factors to be weighed is the public interest in having prosecutorial duties performed by the “constitutional officer chosen by the electorate.” ("Working Families Party at 546.)
In addition to that public policy concern, this court has two other public policy concerns regarding the instant request. The first is that St. Lawrence County is a rural area with a relatively small practicing bar. The adjoining counties from which a special prosecutor could be appointed are also rural in nature and have fairly small bar memberships. The task of finding one or more special prosecutors willing to take on approximately 59 county court cases (plus an unknown number of justice court cases), is daunting. The second concern is that the costs associated with such appointments would harshly burden an already fiscally stressed county.
Based upon the petition and supporting affidavits, a review of the existing law, and the public policy concerns noted above, this court is of the opinion that it could eliminate the primary conflict averred by counsel by appointing a special prosecutor to undertake the investigation of the alleged criminal conduct of attorney Narrow in his representation of defendant Oral Nicholas Hillary, and in his representation and dealings with former Chief Assistant District Attorney David Haggard.[11] The crux of the current conflict as between the Office of the District Attorney and attorney Narrow resides in the criminal investigation of attorney Narrow as announced by District Attorney Rain in open court and on the record. If this *720 District Attorney’s Office is no longer investigating the alleged criminal activities of attorney Narrow, then the conflict as between them is minimized.
That is not to say the conflict disappears, but the stated issue of having members of the District Attorney’s Office interacting with the target of a grand jury investigation on a near daily basis abates. The remaining conflict, which would be the continued contact of the potential witnesses, when measured under the reasonableness standard, does not rise to the level requiring disqualification. The players involved are professionals and are expected to engage in their professional discourse in conformance with the existing Rules of Professional Conduct and the Standards of Civility. Again, even in this instance, the court does not find that the resulting appearance of impropriety rises to the level necessary to appoint a special prosecutor in all of attorney Narrow’s pending cases in St. Lawrence County. Additionally, there has been no assertion by the Office of the District Attorney that they cannot deal with attorney Narrow in an impartial or evenhanded manner. Once the issue of attorney Narrow as the target of a criminal investigation has been neutralized, there remains only the appearance of impropriety, and such a claim, in and of itself, does not justify the relief requested herein.
The court is cognizant of the fact that no specific request for the appointment of a special prosecutor involving the purported criminal activities of attorney Narrow, and of his relationship with former Chief Assistant District Attorney David Haggard, has been made to the court. However, in consideration of all of the allegations made in the instant application, and upon review of the relevant facts and applicable law, the court finds it can legitimately reach that issue and render that determination. The appointment of a special prosecutor to investigate the activities of attorneys Narrow and Haggard is a remedy that allows the court to address the concerns of the parties involved, but also significantly reduces the number of cases in which a special prosecutor must be appointed. Such a result obviates the need to appoint a special prosecutor(s) in approximately 59 or more matters, avoids the concomitant costs to the county, and also minimizes the inherent awkwardness of the District Attorney investigating the activities of her own former Chief Assistant District Attorney while he was employed in her office.
Nevertheless, despite the decision herein, there may be particular cases involving attorney Narrow which require the *721 appointment of a special prosecutor. The denial of the general request to appoint a special prosecutor in all cases involving attorney Narrow is without prejudice. It is clear that circumstances may arise in any individual case which require an application to be made to the court. Either party may renew their respective requests on a case by case basis, keeping in mind that any such request must fall within the standards delineated above, and be supported by a sound factual basis and appropriate documentation, if any.
Furthermore, this decision does not eliminate the need for attorney Narrow to disclose to his clients in relevant cases that he was simultaneously representing a member of the District Attorney’s Office in a civil matter, nor does it eliminate the need for the court to satisfy itself of the propriety of attorney Narrow’s continued representation of those clients.
In the previously discussed matter of People v Shawn G. Sheridan, both the People and the defendant have requested the appointment of a special prosecutor. Due to the events as they unfolded on the record on April 13, 2016, the court believes it must grant the request for a special prosecutor. In that particular case, the District Attorney questioned the legitimacy of the pending indictment due to the relationship of attorney Narrow and former Chief Assistant District Attorney David Haggard, and announced the existence of a pending criminal investigation as against attorney Narrow, and by implication, former Chief Assistant District Attorney David Haggard. Under those circumstances, the court finds actual prejudice to the defendant arising from this conflict of interest and will grant the request for a special prosecutor. (See People v Adams, 20 NY3d 608 [2013].)
The court reaches a different result upon review of the transcript in the matter of the People v James Francis from May 10, 2016. Although the defendant joined in the request for a special prosecutor, there are no circumstances presented which permit the court to make a finding of actual prejudice to the defendant arising from the conflict as between the District Attorney and attorney Narrow. As a result, the court denies the request for the appointment of a special prosecutor in that case.
Finally, the court would note that the petition and affidavits submitted by the Office of the District Attorney were not submitted under seal. Furthermore, most of the allegations contained therein originate from matters occurring on the rec *722 ord and in open court. The court is also aware that the request for relief by the Office of the District Attorney has been widely reported in the local media. As a result, the court finds no reason to seal either the petition and supporting documents, nor the decision and order herein.
For the reasons stated above, the court hereby denies the blanket request of the Office of the District Attorney for the appointment of a special prosecutor in every case in which attorney Narrow is the attorney for the defendant. In order to reach that result, the court has determined that it will appoint a special prosecutor to investigate the purported criminal activities of attorney Narrow arising out of both his representation of defendant Oral Nicholas Hillary, and his purported representation of, and professional interactions with, former Chief Assistant District Attorney David Haggard. The court will also appoint a special prosecutor in the matter of People v Shawn G. Sheridan. The request for the appointment of a special prosecutor in the matter of People v James Francis is denied for the reasons stated herein.

. The law firm of Dumas & Narrow is comprised of the principals Edward F. Narrow, Esq., and Peter Dumas, Esq.; Attorney Robert M. Bailan, Esq., is “of counsel” to the firm.

. Judge Richards was unavailable as he has been temporarily assigned to matters in Franklin County, and his pending criminal actions in St. Lawrence County are currently assigned to the Honorable Derek P. Champagne.

. CPLR 2106 permits an attorney licensed in this state to subscribe and affirm a statement to be true under penalties of perjury in lieu of an affidavit.

. The sworn petition contained a corrected caption, which was requested by the court, entitled ‘‘In the Matter of the Application for a Special Prosecutor dated May 10, 2016.”

. The petition was not accompanied by a notice of petition, or any other document or pleading, setting forth a return date.

. Although media accounts are referenced in general, no specific accounts, articles, or reports are attached nor referred to in the application.

. As of the hearing date, it was not clear if Chief Assistant District Attorney Haggard was still an employee of the Office of the District Attorney.

. In the Sheridan transcript from April 13, 2016, District Attorney Rain stated as follows: “Judge can I just address one issue that you said? The defendant doesn’t have a right to a new District Attorney. That is my decision” (emphasis added).

. It is not clear if a formal complaint was filed with the Committee on Professional Standards, or if attorney Narrow submitted a letter to the Appellate Division.

. The court would note that it has not stayed any cases pending resolution of the instant application. Therefore, cases are still being heard before Judge Champagne, of which some are presumably being disposed.

. This would also eliminate the seeming impropriety of the sitting District Attorney conducting a criminal investigation into the activities of her former Chief Assistant while he was a member of her staff.